UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES MURRAY,

                              Plaintiff,                        DECISION AND ORDER

vs.

                                                                    17-CV-6279 (CJS)

TODD QUEENO, *et al*.,

                              Defendants.

_____

Plaintiff James Murray is an inmate in the custody of the New York State Department of Corrections and Community Supervision (DOCCS). All remaining defendants in this action are either employees or former employees of DOCCS, including DOCCS Commissioner Anthony J. Annucci, members of his staff, and corrections officers at various of the facilities in which Murray has been housed. Murray alleges two causes of action in his complaint under 42 U.S.C. § 1983: (1) violation of his right to equal protection the free exercise of his Native American religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and (2) failure to protect him from an assault by another prisoner in violation of the Eighth Amendment.

The matter is presently before the Court on Murray's motion for partial summary judgment on the issue of liability for violation of his right to the free exercise of his Native American religion. Mot. for Summ. J., May 20, 2022, ECF No. 76. For the reasons stated below, Murray's motion for partial summary judgment [ECF No. 76] is denied. The Court will contact counsel within 14 days from the date of this order to schedule a pretrial conference.

BACKGROUND

What follows is a summary of the undisputed facts as stated in Plaintiff's Rule 56 Statement of Facts, Defendants' Response, and the supporting documentation. Pl. Statement of Facts, May 20, 2022, ECF No. 76-1; Def. Response, June 27, 2022, ECF No. 79-3.

As indicated above, Murray is incarcerated within the DOCCS network of correctional facilities. Beginning in 2014, he attempted to have his religious designation changed to "Native American." DOCCS Directive 4202, Sec. XII(D) permits inmates so designated to possess a medicine bag, sacred herbs for religious practices, a personal smoking pipe, a "smudging ashtray," and various other artifacts or items needed for ceremonies as approved by the Director of [Ministerial, Family, and Volunteer Services ("MFVS")]. The directive also allows designated inmates to practice smudging and smoking two times per day, and to participate in "nine holy days for Native Americans, on all of which observant inmates receive work exemptions and special meals . . . ." *Rossi v. Fischer*, No. 13CV3167 PKC DF, 2014 WL 5778702, at *17 (S.D.N.Y. Sept. 11, 2014), *report and recommendation adopted*, No. 13-CV-03167 PKC DF, 2014 WL 5786901 (S.D.N.Y. Nov. 5, 2014). However, "Native American designations can only be approved after appropriate verification of the inmate's ancestry by the Director of MFVS in consultation with DOCCS Native American Chaplains." DOCCS Directive 4202, Sec. VIII.

In accordance with Directive 4202, Murray was advised to provide documentation from his "tribal authority" to verify that he is a descendant of a Native American tribe. In response, Murray provided DOCCS with a copy of his "Native American Warrior Society Intertribal Identification Card," issued by Chief Blackhawk San Carlos. After his attempts to contact the card issuer were unsuccessful, DOCCS' Native American Chaplain declined to accept Murray's documentation. Consequently, Murray's religious designation has not been changed to "Native American."

Acting *pro se*, Murray initiated this action in May 2017, arguing that his rights to the free exercise of his Native American religion were being violated, and – in an unrelated

incident – that corrections officers at Wende Correctional Facility failed to protect him from an imminent attack by another inmate. Am. Compl., Oct. 23, 2017, ECF No. 8. No dispositive motions were filed by either party prior to the deadline. In March 2020, the Court granted Murray's motion to appoint counsel. ECF No. 53. Further, in response to the Court's inquiry regarding their position on the free exercise claims, Defendants submitted a memorandum stating that "[t]he implementation of DOCCS' policy [to require documentation of Native American descent] was not a result of purposeful discrimination against the plaintiff, rather it was to accommodate inmates of Native American affiliation and to protect against abuse within the corrections system based on good faith reliance on the Stipulation in *Hughes* [*v. Goord,* 97-cv-6431]." Letter, 1, June 19, 2020, ECF No. 57.

On October 4, 2021, Defendants notified the Court that on the recommendation of counsel they would "immediately begin allowing Mr. Murray to practice the Native American religion to the same extent as other inmates in the same position . . . ." Letter, Oct. 4, 2021, ECF No. 64. That is, although DOCCS continues to decline to change Murray's religious designation to "Native American," it now claims to allow him access to similar items used by the practitioners of the Native American religion to perform individual Native American religious practices. Nevertheless, because Murray's documentation of his Native American descent was not accepted by DOCCS' Native American Chaplain, he is not permitted to participate in Native American group ceremonies and holy days.

At a video conference held on February 25, 2022, the Court granted leave to Murray's appointed counsel to file a motion for partial summary judgment with respect to liability on his claims under the First Amendment and RLUIPA for DOCCS' refusal to change his religious designation to "Native American." At that conference, Murray confirmed that DOCCS had

been allowing him to practice the Native American religion, but he also indicated that his recent filing of a grievance led to a disruption in his ability to do so. On May 20, 2022, Murray filed the motion for partial summary judgment that is presently before the Court.

## SUMMARY JUDGMENT STANDARD

"[T]he trial court's task at the summary judgment motion stage . . . . is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Hence, summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks omitted).

On a motion for summary judgment, the evidence – and the inferences drawn from the evidence – must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As the Supreme Court has explained, there can be no genuine dispute as to any material fact where a party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, a "party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)–(2).

DISCUSSION

It is well-settled that prisoners retain their right to religious liberty even when incarcerated, and are entitled to reasonable accommodation of their religious beliefs. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (citing *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)). Accordingly, Murray – through counsel – seeks summary judgment on Defendants' liability under the First Amendment and RLUIPA for placing a substantial burden on the exercise of his religion, or under the Equal Protection clause of the Fourteenth Amendment for treating him differently than similarly situated individuals. In response, Defendants argue that: Murray cannot recover compensatory damages because he has no physical injury; Murray cannot recover money damages under RLUIPA; Murray has failed to show a substantial burden on his sincere beliefs under the First Amendment and under RLUIPA; Murray has failed to demonstrate a denial of equal protection; and the Defendants are entitled to qualified immunity. Def. Mem. of Law, June 27, 2022, ECF No. 79-4.

Because the Court agrees that Murray has failed to demonstrate a "substantial burden on his religious beliefs," and because Defendants have demonstrated that their refusal to designate Murray's religion as "Native American" is reasonably related to a legitimate penological interest, the Court finds that Murray is not entitled to summary judgment on the claims at issue in the present motion.

The RLUIPA Standard

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that

5

compelling governmental interest." 42 U.S.C. § 2000cc–1(a). Under RLUIPA, prisoners are entitled to "seek religious accommodations pursuant to the same standard as set forth in" the Religious Freedom Restoration Act (RFRA). *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (citation omitted). Thus, a "substantial burden" exists under RLUIPA where the government puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Newdow v. Peterson,* 753 F.3d 105, 109 (2d Cir. 2014) (reciting the RFRA standard).

Courts are to apply the RLUIPA standard "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal quotations omitted). That is, courts must not "read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id.* at 722.

The First Amendment Standard

A claim under the Free Exercise Clause, made actionable against state officials through 42 U.S.C. § 1983, requires that "a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. App'x 52, 55 (2d Cir. 2015). Because courts are not competent "to sit in judgment on the verity of an adherent's religious beliefs," "[a]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.'" *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (internal quotations omitted). "[A] substantial burden exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v.*

*Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (alteration in original).

Nevertheless, prison regulations or policies "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Indeed, the Supreme Court has directed courts to give respect and deference to the judgment of prison administrators even in First Amendment challenges raised within the confines of prisons or jails, and to uphold prison regulations so long as they are "reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 350 (utilizing the analysis set forth in *Turner v. Safley*, 482 U.S. 78 (1987)). In making this reasonableness determination, the court must consider: (1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. *Turner*, 482 U.S. at 89–90.

The Equal Protection Standard

The Equal Protection Clause of the Fourteenth Amendment does not mandate identical treatment for each individual, but it does direct that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Ordinarily, a plaintiff alleging a violation of the Equal Protection Clause "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). However, where the plaintiff alleges an express racial classification or a facially neutral law or policy that is applied in an intentionally

7

discriminatory race-based manner, that plaintiff "is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001). Yet regardless of whether a plaintiff alleges racial discrimination or not, all plaintiffs must also "show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips*, 408 F.3d at 129 (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001) (internal quotation marks omitted)).

Furthermore, as with claims under the First Amendment, courts considering Equal Protection claims under the Fourteenth Amendment should accord "great deference to determinations of prison officials and [utilize] 'a lesser standard of scrutiny . . . in determining the constitutionality of . . . prison rules.'" *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) (quoting *Turner v. Safley*, 482 U.S. 78, 81 (1987)). "The standard is one of reasonableness," and in evaluating whether that standard has been met, courts should consider "1) whether there is a rational relationship between the regulation and the government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether alternatives exist which accommodate the right and satisfy the governmental interest." *Smith v. Perlman*, 658 F. App'x 606, 609 (2d Cir. 2016) (internal quotation omitted).

<u>Analysis of Murray's Claims on Summary Judgment</u>

*Murray's Religious Liberty Claims*

In the present case, Murray has failed to establish an essential element of his religious liberty claims under both RLUIPA and the First Amendment, namely that Defendants have

placed a "substantial burden" his free exercise rights. The only undisputed facts presently before the Court that relate to the burden on Murray's practice of his religion are as follows: Murray applied to DOCCS in 2014 to have his religious designation changed to "Native American;" DOCCS has declined to change Murray's religious designation to "Native American," but has changed his designation to "Other;" and, beginning in October 2021, DOCCS has allowed Murray to acquire the personal items necessary to practice his Native American religion on his own.

Aside from the foregoing facts, the only other related information before the Court consists of conclusory allegations. For instance, Murray's affidavit makes reference to Defendants' "failure to allow me to practice my truly held belief" (¶ 9), "officials continue to deny me the practice of my truly held beliefs" (¶ 11), and "my being denied my right to practice my sincerely held beliefs in the Native American Creed (religion) substantially burdens me my [sic] ability to pray" (¶ 13). Murray Aff., May 20, 2022, Doc. 76-2. Murray's Rule 56 Statement of Facts is similarly conclusory, stating merely, "Plaintiff's ability to practice his sincerely held beliefs have been inhibited and/or denied entirely." Rule 56 Statement at ¶ 6.

At the summary judgment stage, a "plaintiff's bare allegations cannot state or support any cognizable claim against defendant." *See, e.g., Robinson v. Citibank, S. Dakota, N.A.*, No. 06CV5701(NG)(LB), 2008 WL 2946005, at *5 (E.D.N.Y. July 29, 2008), *aff'd*, 368 F. App'x 185 (2d Cir. 2010). Therefore, the Court finds that Murray has failed to make an adequate showing of a "substantial burden" for either RLUIPA or First Amendment purposes.

*Murray's Equal Protection Claim*

With respect to Murray's Equal Protection claim, Murray maintains that DOCCS Directive 4202 violates his rights under the Equal Protection clause because it expressly

9

classifies persons on the basis of race by excluding inmates from the religious designation, "Native American," unless they can prove their Native American ancestry to the DOCCS Director of MVS and the DOCCS' Native American Chaplain. Pl. Mem. of Law at 2–6 (quoting liberally from *Morrison v. Garraghty,* 239 F.3d 648 (4th Cir. 2001)); s*ee also* DOCCS Directive 4202 at Section VIII. Murray further states that due to DOCCS' refusal to designate him as a follower of the Native American religion, his "ability to practice his sincerely held beliefs have [sic] been inhibited and/or denied entirely." Rule 56 Statement at ¶ 6.

In response, Defendants maintain that Murray's motion should be denied because he "fails to present evidence of other similarly situated [prisoners] who are treated differently." Def. Mem. of Law at 11–12. Additionally, Defendants argue that "[t]o the extent that [Murray] claims he is denied Equal Protection because Native American groups do not accept him into their group ceremonies and traditions, DOCCS cannot force Native American groups to accept him and there is no constitutional right for Native American Groups to accept Plaintiff." Def. Mem. of Law at 12–13 (citing, *inter alia*, the American Indian Religious Freedom Act Amendments of 1994, and the stipulation between DOCCS and New York state in *Hughes v. Goord*, 97-cv-XXXX). Lastly, Defendants submit a declaration from the present Director of DOCCS' Ministerial, Family and Volunteer Services division, Nancy Fernandez, which states in pertinent part that if DOCCS "were to allow inmates to self-identify Native American, without the verification process, it . . . . could potentially create an unmanageable process in facilities and become a significant burden for DOCCS." Fernandez Decl., ¶ 28, June 27, 2022, ECF No. 79-1.

The Court is not persuaded by Defendants' first two arguments. In particular, as indicated above, plaintiffs who allege a race-based classification – as Murray does here – are

"not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke*, 258 F.3d at 110; *see also Smith*, 658 Fed. App'x at 610 ("[w]e are not so certain that where, as here, the state expressly classifies inmates on the basis of religion in the prison context, a plaintiff challenging the state's express classification on Equal Protection grounds must show . . . that she was treated differently than members of a similarly situated group . . . ."). Moreover, the Court notes that Defendants' suggestion that the designation "Native American" refers to a "group" rather than a "religion" is not sufficiently supported by legal argument in their papers, and is in any event inconsistent with their earlier statement that DOCCS recognizes "Native American" as a religion. *See* Letter, ECF 57 at ¶ 1.

However, the Court finds that the Fernandez declaration amply supports Defendants' position that Directive 4202's requirement of proof of Native American ancestry is "reasonably related to legitimate penological interests," namely in the orderly and cost-effective running of DOCCS facilities. *O'Lone*, 482 U.S. at 350. As Fernandez points out, the expansion of eligibility for a "Native American" designation would translate to over $2,000 in additional security costs per facility for the additional staff and administrative overhead required to support just one of the nine traditional Native American ceremonies allowed under DOCCS rules. Fernandez Decl. at ¶ 28–40. When enlarged to include all nine of the ceremonies across all 44 DOCCS facilities, the estimate of additional security costs runs to the hundreds of thousands of dollars, even without including additional administrative, facility and food costs that would also be incurred. *Id.* In this context, and on the record presently before it, the Court finds that allowing Murray the opportunity to obtain the requisite items for prayer and private devotion is a reasonable alternative arrangement that both accommodates Murray's

free exercise rights and satisfies the government's interest in the orderly and cost-effective administration of its prisons.

Defendants' Challenge to Murray's Claims for Damages

In addition to opposing Murray's motion for partial summary judgment, Defendants' also seek dismissal of Murray's claims to emotional and mental damages for his First Amendment and Equal Protection claims, as well as money damages under RLUIPA. Defendants correctly point out in their responding papers that 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." *See, e.g., Thompson v. Carter,* 284 F.3d 411, 417 (2d Cir. 2002) ("plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury"). Likewise, the Second Circuit has affirmed that "RLUIPA does not authorize monetary damages against state officers in their official capacities . . . and does not create a private right of action against state officers in their individual capacities." *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (citing *Sossamon v. Texas*, 563 U.S. 277 (2011)).

Nevertheless, Defense counsel's predecessor failed to timely file an application to dismiss these claims, and Defense counsel did not ask leave to seek dismissal of these claims at the time the Court granted Plaintiff's *pro bono* appointed counsel leave to file the present motion. Accordingly, the Court declines to dismiss these claims at this time.

CONCLUSION

For the foregoing reasons, it is hereby, ORDERED that Plaintiff James Murray's motion for partial summary judgment [ECF No. 76] is denied. The Court will contact counsel

within 14 days from the date of this order to schedule a pretrial conference.

      SO ORDERED.

Dated:      October 31, 2022
                Rochester, New York

                                          ENTER:

                                          HON. CHARLES J. SIRAGUSA
                                          United States District Judge